# Authority of the General Services Administration to Provide Assistance to Transition Teams of Two Presidential Candidates

The Presidential Transition Act of 1963, with certain limited exceptions, authorizes the Administrator of the General Services Administration to provide transition assistance only for those services and facilities necessary to assist the transition of the "President-elect" and the "Vice-President-elect," as those terms are defined in the Act. Since there cannot be more than one "President-elect" and one "Vice-President-elect" under the Act, the Act does not authorize the Administrator to provide transition assistance to the transition teams of more than one presidential candidate.

November 28, 2000

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked our opinion whether, under the Presidential Transition Act of 1963, as amended,[1] the Administrator of the General Services Administration ("Administrator") has the authority to provide transition assistance to more than one presidential candidate in circumstances in which it remains unclear after the election which of two candidates will become the President of the United States. With the limited exceptions set forth below in note 3, the Act authorizes the Administrator to expend the funds appropriated to implement the Act only for those services and facilities that are necessary to assist the transition of the "President-elect" and the "Vice-President-elect." *See* Presidential Transition Act, § 3(a). The terms "President-elect" and "Vice-President-elect" are defined under the Act to mean the individuals that the Administrator determines are "the apparent successful candidates for the office of President and Vice-President, respectively." *Id.* § 3(c). Since there cannot be more than one "President-elect" and one "Vice-President-elect" under the Act, the Presidential Transition Act does not authorize the Administrator to provide transition assistance to more than one transition team.[2]

As summarized above, the assistance that the Administrator is authorized to provide under the Presidential Transition Act is expressly tied to the Administrator's determination of a "President-elect" and a "Vice-President-elect." "President-elect" and "Vice-President-elect" are defined terms under section 3(c) of the Act, which provides:

> The terms "President-elect" and "Vice-President-elect" as used in this Act shall mean such persons as are the apparent successful candidates for the office of President and Vice President, respec-

---

[1] The Presidential Transition Act is set out in the notes to § 102 of title 3 of the United States Code *See* 3 U S C. § 102 (1994). The Act has also recently been amended For those amendments, see Presidential Transition Act of 2000, Pub L No 106–293, 114 Stat. 1035 (2000).

[2] This memorandum addresses only the narrow question of the Administrator's authority to provide assistance under the Presidential Transition Act It does not address whether the Administrator, or any other department or agency, may have separate authority to provide transition assistance to more than one transition team.

> tively, as ascertained by the Administrator following the general elections held to determine the electors of President and Vice President in accordance with title 3, United States Code, sections 1 and 2.

*Id.* § 3(c). As a matter of the statutory definition, as well as common usage, there can be only one "President-elect" and "Vice-President-elect" from any election.

It is only to that "President-elect" and that "Vice-President-elect" that the Administrator is authorized by the Act to provide transition assistance. Section 3(a) of the Act, which sets out the services and facilities that the Administrator is authorized to provide, specifically states:

> The Administrator of General Services . . . is authorized to provide, upon request, to each President-elect and each Vice-President-elect, for use in connection with his preparations for the assumption of official duties as President or Vice President necessary services and facilities, including [the assistance specifically identified in subparagraphs (a)(1) through (a)(10)].

*Id.* § 3(a). Accordingly, by its terms, the Act generally authorizes assistance only to the "President-elect" and the "Vice-President-elect." Consistent with this general structure, the subparagraphs within subsection 3(a), which list specific services and facilities that the Administrator is authorized to provide, also generally make explicit reference to the President-elect and the Vice-President-elect. For example, subparagraph 3(a)(2) authorizes the payment of compensation to the "members of the office staffs designated by *the* President-elect or Vice-President-elect." Without the existence of a President-elect or Vice-President-elect, there can be no staff who have been designated and to whom compensation may therefore be paid. *See id.* § 3(a)(2) (emphasis added); *see also id.* §§ 3(a)(1), (3)–(5), (7), 3(b), 3(d), 3(e).[3] Similarly, the provisions in section 5 of the Act for the disclosure of financing and personnel information related to the transition are also expressly premised on, and limited to, the "President-elect" and the "Vice-President-elect." Each subsection in section 5 begins with language along the lines

---

[3] The only exceptions to the general structure of section 3 limiting assistance to a "President-elect" are two provisions from the 2000 amendments that appear to envision the expenditure of funds prior to the determination of a "President-elect." *See* Pub. L. No. 106–293, § 3 (relevant provisions added as subparagraphs (9) and (10) of the Presidential Transition Act) These additional provisions, by their distinct language and functions, reinforce the general limitation that assistance may be provided only to a "President-elect." In particular, subparagraph (10) expressly provides that it applies to the "candidates." *See* Presidential Transition Act, § 3(a)(10) ("Notwithstanding subsection (b), consultation by the Administrator with *any candidate* for President or Vice President to develop a systems architecture plan for the computer and communications systems of the candidate to coordinate a transition to Federal systems, if the candidate is elected." (emphasis added)) Subparagraph (9) involves the development by the General Services Administration of a transition directory on the officers, organization, and statutory and administrative authorities, functions, duties, responsibilities, and mission of each department and agency — expenditures that are preparatory to transition for whomever is determined to be the "President-elect" and that are not materially altered by multiple transition teams since the directory would remain the same

of the following: "*The* President-elect and Vice-President-elect (as a condition for receiving services under section 3 and for funds provided under section 6(a)(1)) shall disclose to the Administrator . . . ." *E.g., id.* § 5(a)(1) (emphasis added); *see also* §§ 5(b)(1), 5(c). We thus believe that both the specific terms and the general structure of the Act preclude the Administrator from relying upon this Act to provide assistance to more than one transition team.

The most plausible contrary argument for providing assistance to multiple transition teams, notwithstanding the clear language and structure of the Act, would be that such assistance is necessary under present circumstances because of the shortened time period for the transition. In support of this argument, it is clear, both in the section of the Act stating Congress's purpose and similar expressions of purpose in the legislative history, that the Act was intended "to promote the orderly transfer of executive power." *Id.* § 2. In this regard, the Act states:

> Any disruption occasioned by the transfer of the executive power could produce results detrimental to the safety and well-being of the United States and its people. Accordingly, it is the intent of the Congress that appropriate actions be authorized and taken to avoid or minimize any disruption.

*Id. See also, e.g.,* H.R. Rep. No. 88–301, at 4 (1963) ("[T]he size and complexity of our Federal Government today, to say nothing of the difficult domestic and international problems that the President must face, make it a vital necessity that the machinery of transition be as smooth as possible and that sufficient resources are at hand to properly orient the new national leader in whatever manner is required. . . . Under present conditions, a new President, in one sense, begins working for the Government the morning after the election."); 109 Cong. Rec. 13,349 (1963) (statement of Rep. Joelson) ("In that interim time he is called upon probably to make more fateful decisions than he will have to make after he is, indeed, sworn into office. For that reason it is up to us to see that he has the tools and the implements.").

We doubt that this expression of intent would, in any event, be sufficient to overcome the evidence from the express terms and structure of the Act that funds appropriated to implement the Act are not available in circumstances in which the Administrator cannot ascertain who the apparent victorious candidate is. The legislative history, moreover, makes clear that Congress did not intend the Presidential Transition Act to be available until an apparent President-elect emerged.

During debate on the bill, concern was raised about the effect that an Administrator's determination of the "President-elect" could potentially have on a close election. *See* 109 Cong. Rec. 13,348–49 (1963). As part of that debate, Representative Gross expressed the concern that, in connection with the voting of the electoral college, "those designated as President and Vice President by the present

Administrator of General Services would be given psychological and other advantages by designating them as President and Vice President." *Id.* at 13,348. In response, Representative Fascell, who was the sponsor of the bill and the House manager, stated as follows: "I do not think so, because if they were unable at the time to determine the successful candidates, *this act would not be operative.* Therefore *in a close contest, the Administrator would not make the decision.*" *Id.* (emphasis added). Representative Gross, however, remained concerned and continued to press the issue. In response to those further inquires, Representative Fascell again responded: "There is nothing in the act that requires the Administrator to make a decision which in his own judgment he could not make. *If he could not determine the apparent successful candidate, he would not authorize the expenditure of funds to anyone; and he should not.*" *Id.* (emphasis added).

Representative Gross was not the only member concerned about the issue, which was raised again later in the debate by Representative Haley:

> I notice that these funds can be used immediately after the general election in November. But how would this situation work, for instance, if the President or, at least, before the determination of the votes in the electoral college, suppose that some person was, say, three or four votes shy? How would this Administrator determine who was in a position to expend these funds?

*Id.* at 13,349. In response, Representative Fascell quoted the section of the bill defining "President-elect" and "Vice-President-elect" and stated:

> This act and the Administrator could in no way, in any way, affect the election of the successful candidate. The only decision the Administrator can make is who the successful candidate — the apparent successful candidate — for the purposes of this particular act in order to make the services provided by this act available to them. And, *if there is any doubt in his mind, and if he cannot and does not designate the apparently successful candidate, then the act is inoperative.* He cannot do anything. *There will be no services provided and no money expended.*

*Id.* (emphasis added). *See also id.* (statement of Rep. Fascell) ("In the whole history of the United States, there have been only three such close situations. It is an unlikely proposition, but if it were to happen, if the administrator had any question in his mind, he simply would not make the designation in order to make the services available as provided by the act. If as an intelligent human being and he has a doubt, he would not act until a decision has been made in the electoral college or in the Congress.").

It is clear from the legislative history that Congress understood and intended that the Presidential Transition Act would simply be unavailable to fund transition services and facilities in circumstances in which the winner of the election is not apparent. This is consistent with the plain language and structure of the Act, which, with the two exceptions noted above in note 3, authorizes the Administrator to provide transition assistance only to the "President-elect" and the "Vice-President-elect." Accordingly, the Presidential Transition Act would not authorize the Administrator to expend the funds appropriated to implement the Act to provide transition assistance to multiple transition teams.

RANDOLPH D. MOSS
*Assistant Attorney General*
*Office of Legal Counsel*